Filed 8/6/25  P. v. Hidalgo CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075992 |
| v. | (Super.Ct.No. FVI20000041) |
| ANTHONY MICHAEL HIDALGO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Tony Raphael,
Judge.  Affirmed.

Kevin J. Lindsley and Anita Jog, under appointment by the Court of Appeal, for
Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney
General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine
Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Anthony Michael Hildalgo was convicted by jury of
aiding and abetting a car theft.  He contends the prosecution presented insufficient

1

evidence that he acted as an accomplice in helping his friends commit the crime. He also contends that: (1) two of the jury instructions prejudicially impeded his alibi defense; (2) the trial judge violated his due process rights as articulated in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) by failing to hold an ability-to-pay hearing before imposing a $300 restitution fine and $70 in assessment fees, and (3) he is entitled to remand for resentencing in light of recent amendments to Penal Code[1] section 1170, subdivision (b). On August 10, 2022, we issued an opinion affirming the judgment. (*People v. Hildalgo* (Aug. 10, 2022, E075992) [nonpub. opn.].)

Subsequently, our Supreme Court granted defendant's petition for review and, on May 14, 2025, transferred the matter to us with directions to vacate our decision and reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), which settled a division among Courts of Appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of section 1170, subdivision (b). Accordingly, we vacated our earlier decision and permitted supplemental briefing from the parties.

Pending reconsideration of the matter, our Supreme Court issued *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), and we requested further supplemental briefing to address its impact. Having reconsidered the matter in light of *Lynch* and *Wiley*, we again reject defendant's contentions and affirm.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

## I.  PROCEDURAL BACKGROUND AND FACTS

Sometime between the late evening of November 19, 2019, and the early morning of the following day, the victim was beaten and bound with an extension cord while his assailants stole various items from his home and took his car.  Over the course of the investigation and at trial, the victim gave a number of accounts that conflicted on certain details, including the precise time the home invasion took place.  Defendant's defense at trial was that he could not have been one of the assailants because he was in police custody for nearly 12 hours on November 20, 2019—from about 3:45 a.m. to about 3:00 p.m.

### A.  *Prosecution's Case*

The victim, who was 5'7" and in his 60s, lived in Hesperia with his wife and son, neither of whom was home when the incident occurred.  The victim was acquainted with defendant (who was in his 30s) through his daughter, Rachel, and had spent time with him on a few previous occasions.  On November 19, 2019, defendant stopped by the victim's house to hang out and asked if he could invite his friends over—two people later identified as Jason Boggs and Cara Anderson.  The four hung out and drank beers for some time, but the details of what happened next vary with the victim's telling.

According to the victim's daughter Rachel, who testified at trial, her father called her "in the middle of the night," crying and shaken up, saying he had just been tied up and robbed.  She rushed over to his house, where he told her that defendant and another man and woman had tied him up, blindfolded him, and taken his personal property and

car. She urged him to call the police, but he did not want to because he was scared, so she ended up reporting the crime.

A Riverside County deputy interviewed the victim on November 21, 2019. He told the jury the victim had visible injuries, appeared a little confused, and had some difficulty remembering the incident. He said the victim told him he had been hanging out with defendant that evening when defendant had invited Boggs and Anderson over. He said defendant left shortly after the couple arrived, probably sometime around 10:00 p.m., and he (the victim) stayed up drinking and smoking marijuana with the couple for a few hours before passing out from intoxication. He woke up in his kitchen at about 4:00 or 5:00 a.m. and heard voices behind him. Whoever was in his house tied him up and ransacked his home for about two hours. He told the deputy he did not get a look at his assailants.

Several months later, in February 2020, the victim filed a claim with his insurance company for the stolen property. In his sworn statement he said he had been robbed at approximately 4:00 a.m. on November 20, 2019, by "three males and a female." He said when he answered the front door, the group pushed their way in, tied him up with an extension cord, threw him down on the kitchen floor, and robbed him.

At trial, the victim said he did not know why he had written there were three males because there were only two—defendant and Boggs. He said he had drunk beers and smoked cigarettes with defendant, Boggs, and Anderson until 11:00 p.m., when everyone left his house. He denied being intoxicated and said he went to sleep in his bedroom. The sound of his doorbell woke him up. He recalled looking at his bedside clock and

4

seeing it was around 4:00 a.m. When he answered the door, defendant and Boggs forced their way inside and pushed him into the kitchen. They punched and kicked him, and defendant said he was "sorry about this" as they tied him up with an extension cord and put a hood over his head. They took the keys to his car and his safes from where he kept them on his belt. For what seemed like a couple of hours, the victim could hear movement around his house, then he heard his garage door open and close a few times.

When the house became silent and he believed the group had left, he untied himself, surveyed the damage to his house and saw that his car, a 2003 Mitsubishi Lancer, was missing. After a few hours, he called his son and daughter and told them what happened.

The prosecution showed the jury photos the police had taken of the victim's injuries and his house after the incident. In addition to his car being stolen, several of his safes had been opened, and his coin collection and other memorabilia had been taken.

A few weeks after the incident, Anderson was caught in Fontana driving the victim's car. Aside from a few coins from the victim's collection found inside the car, his stolen personal property was never recovered.

When asked whether the details of his account would change if he learned defendant had an alibi beginning around 4:00 a.m. on November 20, 2019, the victim said his memory of the timing could be mistaken. He said he had been groggy when he answered the door but was certain defendant was one of the attackers.

## B.     *The Defense*

The defense recalled the investigating deputy, who confirmed he was unaware of any DNA or fingerprint evidence collected from the crime scene implicating defendant. The defense also presented evidence that defendant had been pulled over for a traffic stop one town over, in Apple Valley, at 3:40 a.m. on November 20, 2019.  Defendant was driving a car registered to Boggs.  Inside, the police found syringes but no property belonging to the victim.  Defendant was arrested for driving without a license and possession of drug paraphernalia.  He was taken to Adelanto Detention Center, where he spent several hours until his release later that afternoon, around 3:00 p.m.

## C.     *Instructions, Closing Arguments, and the Verdict*

The prosecution tried defendant as a direct perpetrator of first degree robbery (Pen. Code, § 211) and as an accomplice to car theft (Veh. Code, § 10851, subd. (a)). The trial judge, San Bernardino Superior Court Judge Tony Raphael, instructed the jury on the differences between the two kinds of liability, explaining among other things that accomplice liability, unlike direct liability, does not require the defendant to be present when the crime is committed.  (CALCRIM No. 3400.)  The trial court also instructed the jury that the prosecution was not required to prove the crimes took place exactly on November 20, 2019, "but only that [they] happened reasonably close to that day." (CALCRIM No. 207.)

During closing arguments, the prosecutor argued that defendant had been the group's ringleader, hatching the robbery plan when he realized the victim was alone in his home, then enlisting the help of his two friends.  The prosecutor argued the group had

6

robbed the victim together, then defendant left in Boggs's car so that Boggs and Anderson could steal the victim's car. He told the jury that even though Boggs and Anderson had been the ones to take the car, defendant had acted as an accomplice by helping to "violently force" the victim "into his kitchen where they tied him up" and by driving off in Boggs's car so that Boggs and Anderson could take the victim's. The prosecutor added, "we know that . . . [Boggs and Anderson] left in the Mitsubishi Lancer belonging to [the victim], but it was [defendant] that was aiding and abetting during the course of the robbery."

Defense counsel argued this was a case of mistaken identity—that defendant was not with Boggs and Anderson when they robbed the victim and stole his car, as proven by the fact he was in custody during the time the victim said the incident occurred. The jury found defendant not guilty of robbery but guilty of aiding and abetting the car theft. In a separate bench trial, the judge found he had suffered a prior serious violent felony conviction and sentenced him to six years in prison—the upper term of three years for the theft, doubled under the "Three Strikes" law because of the prior strike. (§§ 1170.12, subds. (a)-(d), 667, subd. (b).)

## II. DISCUSSION

### A. *The Car Theft Conviction*

Defendant argues his car theft conviction is not supported by the record because the prosecution premised his guilt on his having committed the robbery, but the jury found him not guilty of that crime. According to defendant, because the prosecutor argued during closing that defendant aided and abetted the car theft "during the course of

7

the robbery" and the jury acquitted him on the robbery count, "there was no evidence that he aided and abetted the [car] theft." We disagree.

When considering a challenge to the sufficiency of the evidence to support a conviction, we must review "the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." (*People v. Rountree* (2013) 56 Cal.4th 823, 852-853.) Because we are reviewing a paper record whereas the jurors watched each witness testify, we do not reweigh the evidence. (*Ibid*.) Instead, we "'"presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"'" and will not reverse unless there is no hypothesis under which a reasonable jury could find the defendant guilty. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

An accomplice to a crime (or an aider and abettor) is a person who, "'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.'" (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) Factors relevant to determining whether someone has acted as an accomplice include the person's presence at the scene of the crime, their relationship with the codefendants, and their conduct before and after the offense. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.)

Here, the trial record contains sufficient evidence to permit a reasonable jury to find defendant guilty as an accomplice in the theft of the victim's car. While some

aspects of the victim's account varied, he never wavered in his certainty that defendant had been the one to come over first, invited Boggs and Anderson over to the victim's house, and later to tie him up with an extension cord. Though he told the deputy shortly after the incident that he did not see who his attackers were, the jury could reasonably conclude he was not reporting the entire incident out of fear, considering that his daughter testified he had identified defendant as one of his attackers immediately after the incident, was scared, and did not want to talk to the police. The acts the victim ascribed to defendant with certainty during trial—inviting Boggs and Anderson over and tying him up—coupled with the fact he (defendant) had driven off in Boggs's car (as evidenced by his early morning arrest), reasonably support an inference that he knew his friends intended to steal the victim's car and intentionally helped them do so.

Defendant's focus on the fact that the jury acquitted him of the robbery charge is misplaced. During closing argument, the prosecutor argued that defendant aided and abetted the car theft "*during the course of* the robbery" by tying up the victim and thereby preventing his resistance. (Italics added.) This argument did not require the jury to find defendant guilty of robbery as a prerequisite to convicting him of aiding and abetting the car theft. The reason being that the prosecution tried the two counts under different theories of liability. To convict defendant of robbery the jury had to find he was a direct perpetrator of the crime; whereas, to convict him of car theft they need only find he was an accomplice to the crime.

The prosecution's theories of liability thus permitted the jury to find that while defendant had taken part in both offenses, he could be convicted of only one—the one for

9

which he was tried as an accomplice. For instance, the jury could reasonably find defendant had tied up the victim—an act that no doubt facilitated the robbery—while also reasonably concluding he was not a direct perpetrator of the robbery because he did not take any of the victim's personal property. This conclusion is supported by the fact that defendant was not in possession of any of the victim's belongings when he was arrested in Boggs's car. In short, the evidence presented at trial permitted the jury to find that defendant participated in and facilitated both the robbery and the car theft, but, because of the nature of the charges, was guilty of the car theft only.

### B. CALCRIM Nos. 3400 and 207

Defendant argues the trial judge erred by instructing the jury with CALCRIM Nos. 3400 and 207 because they were not supported by the record and impeded his ability to present his alibi defense. We review claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1226 ["We independently review the question of whether the jury was correctly instructed on all elements of a special circumstance allegation."].) "The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law.'" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

Although a trial judge has a sua sponte duty to instruct the jury on "'all general principles of law relevant to the issues raised by the evidence'" (*People v. Souza* (2012) 54 Cal.4th 90, 115), "it is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129). The general principles of law governing the case are ""'those

10

principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'"" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Instructing the jury "as to an issue not predicated upon some theory logically deducible from the evidence" is error because the instruction "presents for consideration a question not properly determinable by them." (*People v. Eggers* (1947) 30 Cal.2d 676, 687.)

We start with CALCRIM No. 3400, which informed the jury that they need not find defendant was present when the car theft was committed to be guilty as an accomplice. Though this is a correct statement of accomplice liability, defendant argues it was error to give the instruction because it was not supported by the record. According to defendant, the prosecution's theory of accomplice liability required him to be present during the car theft because they argued he facilitated the crime by committing the robbery.

This argument suffers the same flaw as the previous one: defendant is over-interpreting the prosecution's theory of accomplice liability. As we have explained, defendant's act of tying up the victim (thereby immobilizing him and preventing his resistance) is enough to aid and abet the car theft; the jury did not also have to find that he personally took any of defendant's property. Having concluded the prosecution's theory did not require him to be present during the car theft, we now ask whether the evidence so required and conclude it did not. After the victim was tied up and either hooded or blindfolded, he could not see what his assailants were doing. This leaves open the possibility that defendant drove off in Boggs's car while Boggs and Anderson were

11

still ransacking the victim's house—that is, before they took his car. As such, the instruction was supported by the evidence, and it was not error to provide it.

We now turn to CALCRIM No. 207, which advised the jury that the prosecution was not required to prove the crimes took place exactly on November 20, 2019, "but only that [they] happened reasonably close to that day." We conclude defendant forfeited his challenge to this instruction by failing to object to it in the trial court. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 498-499.) But even if we were to reach the merits, we would conclude the challenge fails.

As a general matter, the prosecution is not required to plead the exact time of commission of an alleged offense. (§ 955.) However, when a defendant raises an alibi defense, "the exact time of commission becomes critically relevant to the maintenance of the defense." (*People v. Barney* (1983) 143 Cal.App.3d 490, 497.) Thus, to protect a defendant's constitutional right to present a defense, a trial judge may not provide an instruction like CALCRIM No. 207—which deflects the jury's attention from temporal detail—when the "'evidence fixes the commission of the offense at a particular time to the exclusion of any other time and the defendant has presented evidence of an alibi as to that particular time.'" (*People v. Jones* (1973) 9 Cal.3d 546, 557.)

The reason defendant's challenge to CALCRIM No. 207 fails is because the prosecution's evidence did not fix the time of the robbery and the car theft to the period he was in custody. The victim said he thought the home invasion had occurred around 4:00 a.m. on November 20, 2019, but he admitted he was groggy when he woke up and his recollection could be wrong. In addition, his daughter said he had called her earlier,

12

"in the middle of the night," and there was evidence he was still intoxicated when the home invasion occurred.

For all of these reasons, the jury could reasonably conclude the victim's memory of when the robbery took place was compromised, and it could have happened any time between the late evening of November 19 and the early morning of November 20, 2019. The fact defendant was pulled over around 3:40 a.m. does not provide a complete alibi for that stretch of time. Because defendant's alibi is a partial one only, we conclude the judge did not err by giving CALCRIM No. 207 and letting the jury decide whether defendant was present for the entire incident, none of it, or just part of it.

Having concluded neither instruction was erroneous, we reject defendant's claim that the cumulative effect of the instructional errors was prejudicial.

C.      *Dueñas*

At sentencing, the trial judge imposed a $300 restitution fee, a $40 court operations assessment, and a $30 criminal conviction assessment. Despite failing to raise the issue during his sentencing hearing, defendant relies on *Dueñas* to argue the judge erred by failing to determine whether he could pay the fees before imposing them.

*Dueñas* held that it violates due process under the federal and state Constitutions to impose the court operations and facilities fees without first determining the convicted defendant's ability to pay them. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1168-1169.) It also held that "to avoid serious constitutional questions" raised by the statutory restitution scheme, the trial judge must stay execution of the mandatory restitution fine unless they determine the defendant has the ability to pay it. (*Id*. at p. 1172.) In a subsequent

decision, the *Dueñas* court held the defendant bears the burden of showing his or her inability to pay, and the court "must consider all relevant factors," including future earnings and "potential prison pay during the period of incarceration to be served by the defendant." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490-491, fn. omitted.)

Since *Dueñas*, some courts have criticized the decision and declined to follow it, some have concluded the Eighth Amendment's prohibition against excessive fines provides the proper framework for analyzing an ability to pay challenge to fines that are punitive in nature, like restitution, and others have refused to extend its reach beyond the precise circumstances presented in *Dueñas*. (See, e.g., *People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Hicks* (2019) 40 Cal.App.5th 320, 327-329 [holding *Dueñas* was wrongly decided], review granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067-1069; *People v. Kopp* (2019) 38 Cal.App.5th 47, 96-97 [holding Eighth Amendment analysis applies to a restitution fine], review granted Nov. 13, 2019, S257844; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1038-1039 (conc. opn. of Benke, Acting P. J.); *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1103; *People v. Allen* (2019) 41 Cal.App.5th 312, 326-327; *People v. Caceres* (2019) 39 Cal.App.5th 917, 926-927; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138-139.) Our Supreme Court has granted review of the issues presented by *Dueñas* and will resolve the split of authority.

The merits of *Dueñas* aside, the problem with defendant's challenge is the threshold one of forfeiture. While we traditionally excuse the failure to object where an objection "would have been futile or wholly unsupported by substantive law then in

14

existence" (*People v. Welch* (1993) 5 Cal.4th 228, 237), defendant cannot argue his failure to object would have been futile because he had the benefit of *Dueñas* when his sentence was imposed.  The decision came out well before his sentencing hearing.  We therefore conclude his claim of error is forfeited.  (See, e.g., *People v. McCullough* (2013) 56 Cal.4th 589, 593 [failure to object in the trial court forfeits claim on appeal]; *People v. Keene* (2019) 43 Cal.App.5th 861, 864 ["The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our case law"].)

But even if he had not forfeited his challenge and we were to conclude the judge erred by not first determining his ability to pay the fees, we would nevertheless find the error harmless.  This is because the record demonstrates, beyond a reasonable doubt, that defendant will be able to pay the relatively minimal total of less than $400 with future earnings because he is young, healthy, capable of holding a job (as demonstrated by the fact he was gainfully employed for several years before his conviction), and will have an opportunity to earn wages in prison.[2]  (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Duenas* error is harmless if the record demonstrates, beyond a reasonable doubt, the defendant cannot establish their inability to pay].)

D.      *Section 1170, Subdivision (b)*

---

[2]  According to the probation report, prior to his conviction, defendant had been employed by Labor Finders for eight years, setting up tents for military training and earning $11.00 an hour, and by a company called Parexel, participating in research studies and earning $365 per day.

At defendant's sentencing, the judge identified several aggravating circumstances[3] and observed that "any one of [those circumstances] by itself would be sufficient to support the imposition of the aggravated sentencing term." Among the case-specific aggravating circumstances was that the 62-year-old victim was particularly vulnerable and defendant had induced others to participate in the crime. The judge also identified defendant-specific aggravating circumstances, including that defendant had engaged in violent conduct that posed a public danger, had served prior prison terms, and had performed unsatisfactorily on parole. These latter circumstances were based on evidence from his certified record of conviction, which the judge had admitted into evidence and relied on during the bifurcated bench trial where he found, beyond a reasonable doubt, that defendant had suffered a prior strike conviction. The records demonstrate defendant had pled guilty to one count of robbery and one count of receiving stolen property in April 2004. They also show that he had served a prison term for those convictions, was convicted of possessing controlled substances while on parole and returned to custody for the violation, and was released again in 2011.

When the judge sentenced defendant on October 23, 2020, section 1170, subdivision (b), provided in relevant part: "When a judgment of imprisonment is to be

---

[3] The list of aggravating circumstances in California Rules of Court, rule 4.421, includes case-specific factors—such as, the vulnerability of the victim, whether the crime involved weapons, great violence, or a high degree of callousness, and whether the defendant induced others to participate in the crime—and defendant-specific factors—such as, whether the defendant has engaged in violent conduct that indicates a serious danger to society, whether he or she has served a prior prison term, and whether his or her performance on probation or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(a) & (b).)

imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (Stats. 2020, ch. 29, § 14; id. at § 44 [indicating the statute took "effect immediately," i.e., on Aug. 6, 2020].) The judge could utilize a circumstance to """"support its sentencing choice"""" so long as the existence of that factor was """"established by a preponderance of the evidence."""" (See *People v. Hicks* (2017) 17 Cal.App.5th 496, 512.)

While defendant's appeal was pending, the Governor signed Senate Bill No. 567 (2021-2022 Reg. Sess., Stats. 2021, ch. 731), which made significant changes to section 1170 and became effective on January 1, 2022. Where trial judges formerly had discretion to select any term of imprisonment within the statutory range when sentencing a convicted defendant, the new law makes the middle term the presumptive sentence and permits an aggravated sentence only where the defendant has either stipulated to the facts underlying the aggravating circumstances or those facts have been found true beyond a reasonable doubt at a jury or court trial. (§ 1170, subd. (b).) In 2024, our state Supreme Court observed this statutory scheme "tracks fairly precisely the test that *Cunningham* [*v. California* (2007) 549 U.S. 270] articulated to safeguard the Sixth Amendment jury trial guarantee: 'any fact that *exposes* a defendant to a greater *potential* sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a

17

preponderance of the evidence.'"  (*Lynch*, *supra*, 16 Cal.5th at p. 760.)  More recently, the Court held that "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm."  (*Wiley*, *supra*, 17 Cal.5th at p. 1086, fn. omitted.)  At issue in *Wiley* were the aggravating facts for "'increasing seriousness'" of a defendant's prior convictions (Cal. Rules of Court, rule 4.421(b)(2)) and "'unsatisfactory'" "'performance on probation'" (Cal. Rules of Court, rule 4.421(b)(5)).  (*Wiley*, at p. 1082.)  The Court did not expressly address the aggravating fact of a prior prison term.  (Cal. Rules of Court, rule 4.421(b)(3).)

Via supplemental briefing, defendant argues the trial court relied on aggravating factors that are now required to be proved to a jury beyond a reasonable doubt, there is no clear indication how the court would have exercised its discretion under the new standard, and use of a prior prison term aggravating fact that has not been found true by a jury does not amount to harmless error.  (*Lynch*, *supra*, 16 Cal.5th at pp. 742, 773; *Wiley*, *supra*, 17 Cal.5th at pp. 1082-1084.)  The People contend the court did not err in using defendant's prior prison term as an aggravating fact because our state Supreme Court did not address whether such fact must be found true by a jury, and such fact does not require a "qualitative assessment" as stated in *Wiley*, at page 1083.  Alternatively, the People argue any error was harmless beyond a reasonable doubt.  We agree that any error was harmless beyond a reasonable doubt.

18

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman*[4] standard of review. [Citations.] Under that standard, 'a sentence imposed under . . . section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' [Citations.] Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley*, *supra*, 17 Cal.5th at p. 1087.) "We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.'" (*Lynch*, *supra*, 16 Cal.5th at p. 775.)

We conclude beyond a reasonable doubt that the jury would have found true the prior prison term aggravating fact. Certified, admissible documents demonstrate the existence of defendant's prior conviction and prior prison term, and defendant did not dispute the existence of the prior prison term. We disagree with defendant's suggestion that "[e]ven if this court finds that a jury would necessarily find [he] served time in prison for prior convictions, the matter must be remanded for re-sentencing because it cannot be said that the trial court would have imposed an upper term sentence based on this single

---

**4** *Chapman v. California* (1967) 386 U.S. 18, 87.

19

aggravating factor, especially when it had already doubled [his] sentence based on a strike prior." As previously noted, the trial judge identified the applicable aggravating circumstances and explicitly stated that "*any one* of which by itself would be sufficient to support the imposition of the aggravated sentencing term."

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
                                                                                                  Acting P. J.


We concur:


MILLER
                          J.


MENETREZ
                          J.


20